Harold HAMMOND, et al.,
Plaintiffs–Appellants,

v.

COUNTY OF MADERA, et al.,
Defendants–Appellees,

and

James G. Watts, Secretary of the Interior, et al.,
Real-parties-in-interest-Appellees.

No. 87–1921.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1988.
Decided Oct. 19, 1988.

Lawrence R. Stidham, Michael S. Pfeffer, Stephen V. Quesenberry, California Indian Legal Services, Bishop, Cal., for plaintiffs-appellants.

Michael D. Ott, County Counsel for Madera County, Madera, Cal., for defendants-appellees.

Before SCHROEDER and FLETCHER, Circuit Judges, and WATERS,* District Judge.

LAUGHLIN E. WATERS, District Judge:

Beneficial owners of an Indian land allotment appeal (1) the trial court's Findings of Fact and Conclusions of Law denying their claim under 42 U.S.C. § 1983, and (2) the inadequacy of the court's damage award in their trespass action.

## FACTS

On April 16, 1920, the United States issued a trust patent pursuant to federal law to Frank Hammond for a land allotment referred to as SAC–107. Plaintiffs/appellants, nine Chickchansi Indians, received their interests in SAC–107 through intestate succession from the heirs of Frank Hammond's estate. The United States holds the legal title to the allotment in trust for the appellants, who are the beneficial owners of the land. Defendant County of Madera ("County") is a political subdivision of Califor-

---

* Honorable Laughlin E. Waters, Senior United States District Judge, Central District of California, sitting by designation.

vision of the State of California with a governing body organized under the Constitution and laws of the state.

Appellants filed the complaint on April 29, 1983 and their amended complaint on November 7, 1985. They alleged that the County trespassed upon their allotment by constructing, maintaining and utilizing County Roads 422, 423, and 426. They further alleged that County officials, in attempting to secure a right-of-way across the allotment and incorporating the roads into the County system, deprived them of their property rights protected by the Constitution and statutes of the United States. The appellants requested damages for the trespass and pursuant to 42 U.S.C. § 1983.

On May 29, 1986 the appellants filed a motion for partial summary judgment on the trespass issue. The District Court for the Eastern District of California granted their motion, ruling that Madera County was liable for a common law trespass. A court trial was held on November 4 and 5, 1986 regarding the civil rights claims and to determine damages owing for the trespass.

The testimony at trial described the following standard operating procedure for incorporating a road into the Madera County road system. The County Road Commissioner, head of the Road Department, and the County Board of Supervisors, the governing body in Madera County, make the initial decision that a road is needed. The Road Commissioner instructs a right-of-way agent to acquire a right-of-way over the area to be served by the road. The agent ascertains the procedures necessary for obtaining the right-of-way in a given case and obtains any required transfer documents. The agent reports to the Road Commissioner on a periodic basis and consults with the Commissioner when problems arise. The Road Commissioner reviews any transfer documents and, if acceptable, provides any payment necessary. The Board of Supervisors has final approval over any transfer agreements, which the Board records if it deems the documents proper. The Board is then responsible for formally accepting a road into the County-maintained road system. If the right-of-way agent cannot reach agreement with the individual owners, the agent requests the Board to file a condemnation proceeding.

The pathway Madera County officials traveled in the acquisition of Road 422/23 was far more tortuous than the straightforward route just described. On May 20, 1960, Clarence Miles, the County Right-of-Way Agent, contacted the Bureau of Indian Affairs ("BIA") in Sacramento to learn the procedures for acquiring a right-of-way for the road. BIA, in a June, 1960 reply, directed him to Title 25 of the United States Code and Part 161 of the Code of Federal Regulations. Those statutes provide that the Secretary of Interior's approval of any right-of-way transfers is necessary where, as in this case, the land is held in a trust patent.

In March, 1961, Miles contacted the Bureau of Land Management ("BLM") concerning the same subject. BLM, in response, wrongly advised Miles that he negotiate directly with the prevailing landowners to obtain the required rights-of-way. Neither Miles nor any other County of Madera employee attempted to reconcile the conflicting directions from the BIA and the BLM. Instead Miles responded in a letter to BLM thanking them for their guidance.

In February, 1962, Miles acquired a quitclaim deed from Albert Hammond, one of the beneficial owners of SAC–107. Apparently encountering obstacles in the course of acquiring other right-of-way transfer documents, he sought further guidance. On August 14, 1962, the BLM Operations Manager, John E. Clute, properly informed Miles that the allotment land was held in a trust patent and not a fee patent. The district judge in this case found that as of the date of Clute's letter, the Board of Supervisors had constructive notice of the proper procedure to acquire a right-of-way across appellants' property. Miles presented the Hammond quitclaim deed to the Board of Supervisors, which recorded the improper deed in February, 1965.

The matter lay dormant until April, 1969, when BIA informed Miles that the roads impinged upon the allotment land and that the County never procured a legal right-of-way despite BIA's earlier instructions. Miles in a reply essentially blamed the landowners for breaching agreements to deed the necessary rights-of-way and conceded that no valid right-of-way existed. The Board of Supervisors formally incorporated Road 422/23 into the County road system on April 17, 1972. About four years later, the Board recorded a quitclaim deed Miles improperly acquired from another beneficial owner of the allotment, without any questioning as to the propriety of Miles' actions.

The district court concluded that plaintiffs' remedy was damages for trespass, and that the County was not liable under section 1983. It awarded damages in the amount of $4.64 per month from August 14, 1962 until such time as the County acquires a right-of-way across the property to maintain the road. Plaintiffs appealed the denial of their civil rights claim and the district court's damage award.

## DISCUSSION

I. Madera County's liability under § 1983

■ The first issue raised is whether Madera County may be held liable under 42 U.S.C. § 1983 as a result of County officials' actions giving rise to the trespass on plaintiffs' land. In *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court ruled that local governmental bodies are "persons" under section 1983 and are directly suable for damages only when execution of a government's "policy or custom" inflicts the injury for which the government as an entity is responsible under section 1983. In order to hold Madera County liable under section 1983, the appellants must show: (1) that the actions of the Madera County officials involved here were taken under color of law; (2) that the conduct caused a deprivation of plaintiffs' rights, privileges or immunities secured by the Constitution or laws of the United States; and (3) that the conduct was the consequence of a Madera County "policy or custom." *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed. 2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–331, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986).

■ Defendant does not dispute that appellants have established the first two elements. First, it is clear that any action taken by the Madera County Right–of–Way Agent, Road Commissioner and County Board of Supervisors with respect to acquisition of rights-of-way and incorporation of the road were under color of law. Second, the district court granted summary judgment holding that the County had trespassed on the owners' allotment by using and maintaining Madera County Roads 422, 423, and 426, and that this trespass started on August 14, 1962. The County's conduct implicates appellants' rights against deprivation of their property without due process guaranteed by the fourteenth amendment. *See Evers v. County of Custer*, 745 F.2d 1196, 1200 (9th Cir.1984)) (county's action of recording "Declaration of Public Road" with respect to a road situated on plaintiff's private property gave rise to a claim of deprivation of a constitutionally-protected property interest and section 1983 action.).

■ The pivotal issue, then, is whether appellants' injury resulted from acts which can be said to be official county policy. Local governing bodies can be sued under section 1983 only where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690, 98 S.Ct. at 2037. An unconstitutional governmental policy can be inferred from a single decision taken by officials whose acts represent official policy, even though the decision is not intended to govern future situations. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

The Supreme Court has stated that a municipal entity cannot be held liable under

section 1983 simply because it employs a tortfeasor. *Monell*, 436 U.S. at 658, 98 S.Ct. at 611. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983." *Id.* at 694, 98 S.Ct. at 2037.

Identifying the official policymakers has been an intellectual fork along the path of development of section 1983 jurisprudence. The Supreme Court has held that an official's acts represent municipal policy so long as the official has been given "final authority to establish municipal policy with respect to the [challenged] action." *See Pembaur*, 475 U.S. at 481, 106 S.Ct. at 1299 (1986) (position of four Justices.). Courts of Appeals have veered in different directions in their interpretation of this standard. Compare, for example, *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir.1983), with *Jett v. Dallas Indep. School Dist.*, 798 F.2d 748, 759–60 (5th Cir.1986).

The Supreme Court this past term attempted to resolve the conflict in the circuits and clarify the issue in *St. Louis v. Praprotnik*, — U.S. —, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Both the plurality and concurrence in *Praprotnik* agreed that for an official's acts to constitute municipal policy, it must be demonstrated that policymaking authority for a particular city function was delegated to that official. *Id.* 108 S.Ct. at 924, 932. Second, the plurality noted that whether an official or body has the responsibility for making law or setting policy in any given area of a local government's business is a question of state law.[1] *Id.* 108 S.Ct. at 924. Finally, the plurality notes that if authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. *Id.* 108 S.Ct. at 926.

The record in this case establishes that the Madera County Board of Supervisors was the entity authorized to make policy in the area of right-of-way and road acquisition. Defendant has conceded that under California law, the County Board of Supervisors has the responsibility to acquire rights-of-way and incorporate roads into the County maintained system. *See* Cal. Gov't Code section 27281 (West 1979); Cal. Sts. & Hy.Code section 941 (West 1985). While the County Board of Supervisors delegated responsibility to the Right–of–Way agent to negotiate for the transfer of rights-of-way, and it appointed the Road Commissioner to oversee such acquisitions, (District Court Findings of Fact # 2), the Board has retained final approval over any right-of-way transfer documents. It also maintained the authority to record such agreements to officially accept a road into the County system.

■ Defendants here argue that since the Board delegated responsibility for acquisition of rights-of-way to its subordinates, and since those subordinates are not the official policymakers of the County, the County cannot be held responsible under section 1983 for the improper quitclaim deeds. The argument is not well-taken. While Right–of–Way Agent Miles actually obtained the illegal deeds, the Board of Supervisors accepted and approved the documents without ever questioning Miles as to their propriety. The Board even approved an improper right-of-way deed several years after it incorporated the road into the County system. The Board thereby ratified the misconduct which gives rise to the County's liability. Municipal decisionmakers may not insulate themselves from liability by attempting to delegate themselves out of all responsibility.

■ In addition, the Board of Supervisors itself recorded the invalid deeds and authorized the incorporation of the road into the County-maintained system, even though no legal right-of-way had been acquired across appellants' land. The County also authorized construction of a bridge over a creek on the allotment, causing in-

---

1. The plurality and concurrence differ as to whether the identification of policymakers is purely a question of state law or a question of fact. This issue need not be resolved here given the facts of the case.

creased noise and other pollution, and destruction of plants the owners used in practicing their Native American traditions. The Board, thus, actively participated in the deprivation of appellants' property rights protected by the fourteenth amendment.

Defendants claim that the Board of Supervisors did not know that Miles followed incorrect procedures in obtaining the rights-of-way or that Indian land was involved in this case. They argue that the Board's approval of the deeds was handled in a summary proceeding as a mere formality. Accordingly, they contend that the Board was at most negligent in the performance of its duties, that it did not violate appellants' due process rights, and that the Supreme Court's decisions in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), bar appellants' recovery under § 1983.

■ While defendants are correct that mere negligence by government officials does not implicate the protections of the due process clause of the fourteenth amendment, conduct demonstrating gross negligence or reckless disregard for plaintiffs' civil rights has been held to be actionable under § 1983. *See e.g., Ketchum v. Alameda Co.,* 811 F.2d 1243, 1244, 1246 n. 3 (9th Cir.1987) (gross negligence); *Taylor v. Ledbetter,* 818 F.2d 791, 793 (11th Cir. 1987) (*en banc*) (reckless disregard).

■ Here, the district judge found that the Board of Supervisors had constructive notice of the proper procedures to acquire a right-of-way across allotment land as of August 14, 1962. The parties even stipulated in the Pre-trial Order that the Secretary of the Interior or his agent notified

the Board in 1969 that it had no valid right-of-way for the road across the allotment. In addition, the Board is charged with knowledge of the laws, particularly those governing functions within its scope of responsibility. *See United States v. Midway Northern Oil Co.,* 232 F. 619 (S.D. Cal.1916). The Board's approval and recording of improper quitclaim deeds on two occasions, without any inquiry as to their validity, and its incorporation of the road into the County system without the proper right-of-way deeds, constitute reckless disregard of appellants' constitutional rights. See *McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983); *White v. Rochford,* 592 F.2d 381 (7th Cir.1979).

Finally, defendants' argument that the Board did not know the deeds referred to Indian lands leads to the unacceptable conclusion that the Board's power to approve the deeds was utterly meaningless. If the County were shielded from liability on that basis, the Board of Supervisors would be encouraged to maintain ignorance in the performance of its responsibilities in the local government.

■ Accordingly, we reverse the district court's dismissal of appellants' civil rights claim and hold that the County is liable under § 1983. We remand the case for an award of attorney fees under 42 U.S.C. § 1988.[2]

## II. Damages for Trespass

■ The second issue presented is whether the trial court erred in its adoption of the fair market monthly rental value of the property as the measure of damages for the trespass action and whether the resultant award of $1,690.72 is inadequate. Appellants contend that the appropriate

---

**2.** Since appellants already have been awarded compensatory damages on their trespass action, no actual damages should be awarded to appellants' for their section 1983 claim. In addition, under *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), section 1983 plaintiffs, given an appropriate set of circumstances not present here, may recover punitive damages. This case is not one where punitive damages are appropriate for the following reasons. First, appellants failed to request punitive dam-

ages in the prayer for relief of their amended complaint and the issue was not addressed in the Pre-trial Order. Second, the Supreme Court in *Smith v. Wade* has made clear that local governing bodies such as the Count of Madera are immune from awards of punitive damages. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Third, appellants have failed to name in the amended complaint any officials whose conduct could give rise to a claim for punitive damages.

measure of damages is the amount of rents or profits the County received as a result of its trespass on appellants' land, subject to deductions for expenses the County incurred. More specifically, appellants argue that they are entitled to recover the amount of increased revenues the County received from the development of the Sierra Lakes subdivision in the form of higher property taxes and building permit fees, because Road 422/23 was the access road which facilitated the development. In addition, appellants seek consequential damages for loss of use and enjoyment of their land which they claim resulted from the trespass.

Appellants cite *Oneida County v. Oneida Indian Nation*, 470 U.S. 226, 232, 105 S.Ct. 1245, 1250, 84 L.Ed.2d 169 (1985), to support their argument for a rents and profits standard. In *Oneida*, plaintiffs alleged that an agreement effecting a transfer of their land should be declared void under the Non-intercourse Act, 1 Stat. 329. The trial court in that case adopted the fair rental value standard in calculating trespass damages. 470 U.S. at 230, 105 S.Ct. at 1249. The Supreme Court did not review the damage award and did not address it in its opinion.

The instant case is similar to *Watson v. United States*, 263 F. 700 (8th Cir.1920). There, defendant used and occupied Osage Indian Allotments held in trust by the United States without consent of the Indian allotees or the Secretary of the Interior. The court held that the owners had an action for trespass for mesne profits. Reasonable rental value, not rents and profits, was held as the proper measure of damages to be recovered.

Common law principles also indicate that reasonable rental value is the appropriate remedy for trespass. Damage remedies for trespass are essentially compensatory and not punitive. See *Bourdieu v. Seaboard Oil Corp.*, 48 Cal.App.2d 429, 119 P.2d 973 (1941) (plaintiff entitled to reasonable remuneration for the use of the land); *United States v. Marin Rock and Asphalt Co.*, 296 F.Supp. 1213 (C.D.Cal.1969). Thus the courts have held that a mineral lessee

willing and able to develop minerals on the land can recover profits from a trespassing mining company, whereas a lessee without the ability to develop the minerals can only recover the land's lease value. *See, e.g., National Lead Co. v. Magnet Cove Barium Corp.*, 231 F.Supp. 208 (W.D.Ark.1964). Similarly, here, since appellants never owned the Sierra Lakes subdivision and thus had no right to develop it, an award of damages in the amount of revenues earned from the subdivision would constitute a windfall for the plaintiffs.

In addition, we note that the facts giving rise to this section 1983 claim stem back to 1962 and arguably earlier, and appellants did not file this lawsuit until 1983. If we were to award plaintiffs profits the County earned up through the period of this litigation, we would effectively compensate the plaintiffs for delaying the filing of this action. Furthermore, we would encourage plaintiffs in other cases to intentionally refrain from filing suit until such time as defendants had amassed huge profits flowing from alleged misconduct. Such delay and unjust enrichment cannot be rewarded.

Appellants seek recovery for loss of use and enjoyment of their land by virtue of the road. They argue that the County's trespass resulted in increased noise, danger, pollution, and destruction of plants used by the owners in practicing the Native American traditions.

A trespasser is liable in damages for all injuries proximately flowing from his trespass. If a trespass causes mental distress, the trespasser is liable in damages for the mental distress and for any resulting illness or physical harm. *Gavcus v. Potts*, 808 F.2d 596 (7th Cir.1986); *see also Belluomo v. KAKE TV & Radio*, 3 Kan. App.2d 461, 596 P.2d 832 (1979) (allowing recovery of compensatory damages for injuries resulting from a publication of information acquired by trespass); *Kornoff v. Kingsburg Cotton Oil Co.*, 45 Cal.2d 265, 288, 288 P.2d 507, 511 (1955) (holding that once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and injury even if he or she has suffered no

physical injury); *Thompson v. Simonds*, 68 Cal.App.2d 151, 161–62, 155 P.2d 870, 875 (1945) (holding that a plaintiff can recover damages for "pain, anxiety, inconvenience, [and] annoyance" resulting from the interference that defendant's trespass caused to plaintiff's free use of his land.).

 Plaintiffs' claim for consequential damages is hereby remanded to the trial court for a determination of damages that proximately and naturally flow from the trespass.

Finally, appellants claim, and appellees concede, that the district judge erred by excluding from the distribution of damage two of the allotment's beneficial owners. We remand the case for a reallocation of damages to include those previously excluded owners.

## CONCLUSION

The district court's denial of plaintiffs' claim under section 1983 is REVERSED. The case is REMANDED for an award of attorney fees under 42 U.S.C. § 1988 and for recomputation of damages in line with this opinion.