**L.W.,\* Plaintiff–Appellee,**

v.

**Dee GRUBBS; Thomas Nelson; Marlin Hutton; Richard Hill, Defendants–Appellants.**

Nos. 95–35624, 95–35968.

United States Court of Appeals, Ninth Circuit.

Submitted April 18, 1996.\*\*

Decided Aug. 9, 1996.

---

\* The case was originally filed under the full name of the plaintiff, but because the disposition called for publication, the court has decided on its own motion to delete the full name of the plaintiff.

\*\* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule 34–4.

Rives Kistler, Assistant Attorney General, Salem, Oregon, for defendants-appellants.

Kerry M.L. Smith, Smith & Fjelstad, Gresham, Oregon, for plaintiff-appellee.

Before: GOODWIN, THOMPSON and FERNANDEZ, Circuit Judges.

Opinion by Judge GOODWIN; Partial Concurrence and Partial Dissent by Judge FERNANDEZ.

GOODWIN, Circuit Judge:

A female employee was assaulted and injured by a predatory inmate in a state institution and a jury awarded her $325,000 in damages against her supervisor. He appeals the judgment. We reverse.

## PROCEDURAL HISTORY

In a prior appeal of this case, we reversed the Fed.R.Civ.P. 12(b)(6) dismissal of the complaint, holding that the complaint "alleged facts demonstrating official deliberate indifference in creating the danger." *L.W. v. Grubbs,* 974 F.2d 119, 123 (9th Cir.1992) (*L.W.I*), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993). We did not then discuss what "mental state beyond 'mere negligence' is required for due process third party claims" because the facts alleged in the complaint, if true, demonstrated deliberate indifference, on the part of the state officials, in creating the danger. *L.W. I,* 974 F.2d at 122–23.

On remand, the district court granted summary judgment in favor of all the original defendants, except for Grubbs, because there was no evidence that others were responsible for creating the danger to the plaintiff. Grubbs, plaintiff's immediate supervisor, went to trial.

In explaining the use of a special verdict form, the district court instructed the jury that Grubbs could be found to have violated plaintiff's federally protected rights if he affirmatively created the danger that resulted in her injury and if, in creating the danger, he acted with gross negligence, recklessness or deliberate indifference. When the jury returned the verdict form, the verdict found that Grubbs had acted with gross negligence but not with recklessness or deliberate indifference.

Because this court had not provided clear guidance to the trial courts on the degree of culpability necessary to support Section 1983 liability against a supervisory employee whose actions or inactions left a subordinate employee in a position of danger in an institution populated by predatory inmates, the court entered judgment on the verdict, and this appeal followed.

## FACTS

Defendant Grubbs, a registered nurse, is in charge of the medical clinic at MacLaren School for Boys, an institution housing juvenile males under various levels of custodial supervision.

On August 15, 1989 the plaintiff was working the swing shift in the clinic. Prior to her arrival at work, another nurse, Elita Sifuentez, asked for a "student" to help her around the clinic. David Blehm, an inmate known to be a sex offender, volunteered and Sifuentez cleared his participation with Sherm Maupin, the person responsible for assigning students to do various jobs around the school. Maupin approved Blehm to work at the clinic until 4:00 p.m., the time when the male staff would be leaving the clinic. Maupin knew that Blehm was a sex offender and told the defendant that he did not want him to be working one-on-one with any women.

The plaintiff began her shift that day at 3:00 p.m. Later that afternoon, the kitchen called to inform the clinic that the kitchen did not have a "cart-boy" to bring the evening meal to the clinic. Grubbs told the plaintiff that she could use Blehm as a "cart-boy." Blehm delivered the food and left without incident. Grubbs then left the clinic at about 4:30 p.m.

After Grubbs had left, the plaintiff called Blehm back to the clinic so that he could fix her a pizza. The plaintiff, now alone in the clinic, worked while Blehm prepared the pizza. Then, while Blehm was alone with the plaintiff, he attacked her and attempted to rape her. The assault stopped when Blehm heard the phone ring.

## DISCUSSION

While the parties have briefed a number of issues, only one critical determination must be made at this time by this court: the standard of culpability upon which a state official can be held liable under Section 1983 to a prison employee for harm inflicted upon the employee by a prisoner. To put it another way, in this circuit, is something less than deliberate indifference enough to submit such a case to a jury? The answer is "no."

### I. The Proper Standard of Culpability

 This Court has been consistent on at least one point: We have not deviated from the principle that deliberate indiffer-

ence on the part of the responsible official, to the safety of employees in the presence of known danger, created by official conduct, is sufficient to establish a due process violation under Section 1983 for injury caused in part by a state created danger. *See, e.g., L.W. I,* 974 F.2d at 122–23; *Wood v. Ostrander,* 879 F.2d 583, 588 (9th Cir.1989),[1] *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). We have not, however, expressed with clarity the legal principles by which the government's supervisory employees become liable for damages caused by third parties to the various types of victims who seek money damages under § 1983 for violations of their rights to "substantive due process" of law.

Putting aside momentarily the linguistic difficulties in mixing substantive law and procedural law to invent new constitutional rights, we have more or less accepted the notion that torts can be constitutionalized in order to provide remedies for victims who can bring their claims within some framework or theory that will justify the remedy, although we have yet to decide whether some conduct less culpable than deliberate indifference would suffice.

To complicate matters for the trial bench, we have rather loosely spoken of gross negligence in some § 1983 cases as a ground for imposing liability. These dicta have, understandably, confused the trial bench and have infused plaintiffs with high hopes of civil rights recovery, plus attorney fees, against their supervisors in actions against municipal and state government functionaries who do not share the governmental unit's immunity from respondeat superior or vicarious liability of the employer.

### II. Prior Ninth Circuit Cases Distinguished

In our amended opinion in *Wood v. Ostrander* we stated that the "law [with respect to the standard of culpability] in this circuit is unclear." *Wood,* 879 F.2d at 587. That statement, actually an understatement, is still true.

We acknowledged that both our earlier opinion in that case, *Wood v. Ostrander,* 851

---

1. This opinion amended the earlier decision in *Wood v. Ostrander,* 851 F.2d 1212 (9th Cir.1988).

The citations to *"Wood"* refer to the amended opinion.

F.2d 1212, 1214–15 (9th Cir.1988), and *Fargo v. City of San Juan Bautista*, 857 F.2d 638, 640 (9th Cir.1988), had stated that either gross negligence or reckless conduct would be sufficient to establish a due process violation. *Wood*, 879 F.2d at 587. But then we stepped back from those statements because the Supreme Court's *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989),[2] "calls into question our statements in *Fargo* and in our prior opinion in this case that a showing of gross negligence will suffice to establish the requisite level of fault in a section 1983 action against an individual state actor such as [a state trooper]." *Wood*, 879 F.2d at 588.

Nonetheless, the *Wood* decision did not address the minimum standard of culpability because the question presented by the appeal, from a summary judgment, was whether on that record a jury could conclude that the defendant had acted with deliberate indifference. *Wood*, 879 F.2d at 588. Unfortunately, because we did not take that opportunity to put gross negligence to rest, it, like a neoplasm, has metastasized and found its way into other cases.

For example, the plaintiff argues that the gross negligence rule stated in *Fargo* has not changed because in *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir.1991)(en banc), *cert. denied*, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992), this Court stated that gross negligence or recklessness gives rise to a due process violation outside of the jail or prison context. *Redman*, 942 F.2d at 1440 n. 6 (citing *Fargo* ). That statement, however, was dictum because *Redman* dealt only with the duty the state owes to pretrial detainees who are injured, not to state prison employees unsatisfied with their workers' compensation remedies. Both the plaintiff here, and the en banc court in *Redman*, overlooked the *Wood* caution which limited *Fargo*.

The plaintiff next points to our decision in *Neely v. Feinstein*, 50 F.3d 1502 (9th Cir. 1995) where we stated that hospital officials are liable under section 1983 if "they exhibit conscious indifference amounting to gross negligence." *Neely*, 50 F.3d at 1508 (internal quotations and citation omitted). That decision was predicated on our reasoning in the first *Wood v. Ostrander* opinion that we later amended[3] and upon *Fargo*. *Neely*, 50 F.3d at 1508. Furthermore, the plaintiff in *Neely* was in state custody at a mental institution and therefore the state had a "special relationship" with the plaintiff. While *Neely* can be distinguished on its facts from the present case, its language (which was not necessary to the decision) is either incorrect to the extent that it approves the gross negligence standard, or it must be limited to the claims of inmate plaintiffs injured because of a miscarriage of the "professional judgment of a [government] hospital official" in the context of a captive plaintiff.

Finally, the plaintiff identifies *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir.1995) as another case in which we appear to have adopted a plain gross negligence standard for federalizing workplace injuries (sexual harassment and discrimination by supervisor). But the plaintiff claims too much for *Fuller*. *Fuller* does discuss the gross negligence standard, but only in the context of a female police officer seeking Section 1983 damages for abusive treatment by a male fellow officer. *Fuller*, 47 F.3d at 1534. There we reversed a summary judgment for the city because material questions of fact required a trial. What we said in obiter about gross negligence was wholly unnecessary. The factual allegations would, if proved at trial, establish deliberate indifference by the defendant in allowing a middle-management officer to abuse the plaintiff. Admittedly, and forgetfully, the gross negligence language in *Fuller* is quoted from *Hammond v. County of Madera*, 859 F.2d 797, 803 (9th Cir.1988), a case decided before

2. The Supreme Court adopted the deliberate indifference standard for section 1983 actions against a municipality based upon a claim that the municipality's lack of training for police officers was a policy causing a violation of constitutional right of a person subject to police action.

3. The *Neely* panel should have been well aware of the amended opinion and our step back from espousing gross negligence as the proper standard. Somehow, however, they omitted that from their decision.

we backed away from a "bare" gross negligence standard in *Wood.* *Wood* effectively superseded *Hammond* to the extent it espoused a gross negligence standard for Section 1983 liability. It is little wonder that our district courts have found difficulty in navigating the Section 1983 damage claims waters.

### III. Other Circuits

A review of case law from our sister circuits reveals that gross negligence is not sufficient to establish a due process violation based on a state created danger to employees. Cases decided after *Collins v. Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) are particularly instructive. In that case, the Supreme Court recognized and dealt with the anamalous results of carving out a "substantive component" from the Due Process Clause of the Fourteenth Amendment. *Id.* at 125, 112 S.Ct. at 1068–69.

#### A.

The most factually similar case to our own, is *Uhlrig v. Harder,* 64 F.3d 567, 573 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996). *Uhlrig* presents an accurate statement and application of the standard of culpability for a due process violation under § 1983. Although the case couples the troubling, subjective "shocks the conscience" test to the deliberate indifference inquiry, it nonetheless helps round out a theory of liability that trial judges and juries can apply to narrowly defined, government created, known, and disregarded, hazards of the workplace.

In *Uhlrig,* the plaintiff's wife worked at Topeka State [Mental] Hospital as an activity therapist for members of the general hospital population. During most of the wife's employment, the hospital maintained a specially secured unit for the criminally insane. However, due to budgetary constraints, the state decided to eliminate the special unit. As a result, a criminally insane patient, who previously had sexually assaulted a female patient, was placed in the general population where the wife was working. One day, after returning with some patients who had been off

the grounds attending a movie, the plaintiff's wife found herself alone with the criminally insane patient. The patient attacked and killed her. The plaintiff then sued the state for creating the danger which set off the chain of events leading to his wife's death.

Judge Ebel listed the elements required by the Tenth Circuit to state a Section 1983 claim for damages resulting from a state created danger in the workplace:

> Merging the above concepts and applying them to the facts of the instant case, Plaintiff [Uhlrig] must demonstrate that (1) Uhlrig was a member of a limited and specifically definable group; (2) Defendants' conduct put Uhlrig and the other members of that group at substantial risk of serious, immediate and proximate harm; (3) the risk was obvious or known; (4) Defendants acted recklessly in conscious disregard of that risk; and (5) such conduct, when viewed in total, is conscience shocking.

*Uhlrig,* 64 F.3d at 574.

In the Tenth Circuit, recklessness with a conscious disregard of a known or obvious risk "includes an element of deliberateness" and "contains an intent component". *See Uhlrig,* 64 F.3d at 573 n. 8 (citations omitted). In addition, the Tenth Circuit recognizes that "deliberate indifference" is the same kind of conduct it labels "recklessness with a conscious disregard." *See Uhlrig,* 64 F.3d at 574 nn. 9–10. In other words, gross negligence, in the Tenth Circuit, would not alone be sufficient to establish Section 1983 liability.

#### B.

Other circuits offer similar statements of the degree of culpability that will support Section 1983 recovery. *See, e.g., Lewellen v. Nashville,* 34 F.3d 345 (6th Cir.1994)(gross negligence is not sufficient in light of *Collins v. Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)), *cert. denied,* —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995); *Johnson v. Dallas Independent School District,* 38 F.3d 198, 201 (5th Cir.1994)(deliberate indifference would be required in state created danger case),

cert. denied, —— U.S. ——, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995); *Sellers v. Baer*, 28 F.3d 895, 902–03 (8th Cir.1994)(gross negligence not enough in state created danger case), *cert. denied*, —— U.S. ——, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152–55 (3d Cir.1995)(in a state-created danger case even if there was a constitutional violation, Section 1983 liability will not attach unless the defendants acted with deliberate indifference), *cert. denied*, —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995).

IV. The Gross Negligence Instruction in the pending Case

▮ The plaintiff alternatively argues that even if gross negligence is not the proper standard, the actual jury instruction given was the same as the deliberate indifference standard employed in other circuits. The gross negligence instruction in this case reads:

> A person acts with gross negligence when the person intentionally acts unreasonably with regard to a known risk or acts unreasonably with regard to a risk so obvious that the person must be assumed to have been aware of it. And the magnitude of the risk is such that it is highly probable that harm will follow.

The recklessness instruction reads:

> A person acts recklessly when his acts or omissions are done in conscious disregard of the known probable consequences.

The deliberate indifference instruction reads:

> A person acts with deliberate indifference when he disregards a substantial risk of serious harm of which he is aware.

A closer look at the definition of recklessness with a conscious disregard/deliberate indifference employed by other circuits reveals that there is a difference between those definitions and the definition of gross negligence used in this case.

In our case, the jury was given three bases for imposing liability upon the defendant, and it exonerated him of two of the bases. The jury found him "guilty" only of gross negli-

gence, a standard we now hold to be insufficient when an employee sues a supervisor in a § 1983 action for a workplace injury. It is now clear that such tortious conduct, when proved, may well result in some state law remedy, but gross negligence, in and of itself, is not unconstitutional.

A.

The standard in the Tenth Circuit requires the defendant to "act[ ] recklessly in conscious disregard" of a "substantial risk of serious, immediate and proximate harm." *See Uhlrig*, 64 F.3d at 574. Such conduct occurs when the "defendant recognizes the unreasonable risk and actually intends to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Uhlrig*, 64 F.3d at 573 n. 8. The *Uhlrig* standard more closely follows the district court's definition of deliberate indifference than its definition of gross negligence or even recklessness.

Under the district court's instruction in this case, a defendant is grossly negligent if he acts unreasonably with regard to a known risk. There is a significant difference between acting unreasonably with regard to a known risk and thereby exposing someone to that risk, and intentionally exposing someone to a known risk. In this case the jury found only that the defendant acted unreasonably and was therefore guilty of gross negligence, but the jury explicitly found that the deliberate indifference standard had not been met.

B.

In *Manarite v. City of Springfield,* 957 F.2d 953 (1st Cir.), *cert. denied*, 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992), a jailhouse suicide case, the First Circuit stated[4] that deliberate indifference requires:

> the complainant [to] prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.... While this mental state can aptly be described as "recklessness," it is recklessness not in the tort-law sense but in the

---

4. The First Circuit's definition of "deliberate indifference" was espoused by the Fifth Circuit in

*Leffall v. Dallas Independent School District,* 28 F.3d 521 (5th Cir.1994).

appreciably stricter criminal-law sense, requiring actual knowledge [or wilful [sic] blindness] of impending harm, easily preventable.

*Manarite,* 957 F.2d at 956 (citations omitted).

The court continued, stating that

when liability for serious harm or death, including suicide, is at issue, a plaintiff must demonstrate "deliberate indifference" by showing (1) an unusually serious risk of harm, (self-inflicted harm in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk.

*Manarite,* 957 F.2d at 956.

This deliberate indifference standard is also very different from the gross negligence instruction given in this case because it requires that the defendant have actual knowledge of, or willfully ignore, impending harm. The gross negligence instruction here does not incorporate this notion of impending harm, i.e. the defendant knows that something *is* going to happen but ignores the risk and exposes someone to it. As with the standard from the Tenth Circuit, we find that the standard from the First Circuit follows more closely the district court's definition of deliberate indifference.

## CONCLUSION

We conclude that in order to establish Section 1983 liability in an action against a state official for an injury to a prison employee caused by an inmate, the plaintiff must show that the state official participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it. Only if the state official was deliberately indifferent does the analysis then proceed further to decide whether the conduct amounts to a constitutional violation. We have not added a requirement that the conscience of the federal judiciary be shocked by deliberate indifference, because the use of such subjective epithets as "gross" "reckless" and "shocking" sheds more heat than light on the thought processes courts must undertake in cases of this kind. Deliberate indifference

to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger, is enough. Less is not enough.

REVERSED.

FERNANDEZ, Circuit Judge, concurring and dissenting:

Although I concur in the majority opinion for the most part, I write separately to clarify the scope of my concurrence, and to dissent in part.

I believe that any explication of the law in this area must start with *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In *Collins,* the Supreme Court was dealing with a situation where a supervisor placed a government employee in a position of danger which resulted in the employee's death. The complaint did not allege that there was any intent to deliberately harm the employee and did not even say that the supervisor knew, or should have known, that there was a significant risk of injury. *Id.* at 125–26, 112 S.Ct. at 1069. The plaintiff argued that "the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's 'deliberate indifference' to Collins' safety was arbitrary government action that must 'shock the conscience' of federal judges." *Id.* at 126, 112 S.Ct. at 1069. The Court did not reject the possibility that those theories could serve as separate bases of liability. It dealt with the first one by pointing out that there was no free-floating right to any particular level of safety and went on to opine that, in general, some rather deliberate sort of action was required before a constitutional wrong could be found. *Id.* at 127 n. 10, 112 S.Ct. at 1069 n. 10.

In the case at hand, we are rejecting any standard short of deliberate indifference when a public employee claims a substantive due process right to be free from harm. That is compatible with the first theory in *Collins,* and I, therefore, agree. But that will not always be the end of the matter because *Collins* did not stop there; it went on to discuss the second theory.

Depending on how *Collins* is read, the Court either required that the government

employee's action must also shock the conscience (or, perhaps, be arbitrary in the constitutional sense), or it recognized that the shocks the conscience test is an entirely separate basis for finding a substantive due process violation. As the Court said:

> We also are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.... Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law....

*Id.* at 128, 112 S.Ct. at 1070 (citation omitted).

Other circuits have incorporated that test into their jurisprudence by indicating that it must always be met in a case of this nature. The Tenth Circuit has declared that the test is a necessary overlay when substantive due process violations are claimed to arise from some governmental action. *See Uhlrig v. Harder*, 64 F.3d 567, 573–74 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996). That is, unless the action is so outrageous that it does shock the conscience, it cannot constitute a constitutional tort at all. Just how outrageous the action would have to be is not entirely clear, especially when one recognizes that the Supreme Court seemed to use "shock the conscience" and "arbitrary in a constitutional sense" almost interchangeably.

The Third Circuit has also opined that there cannot be a substantive due process violation at all unless the conduct of a governmental employee "amounts to an abuse of official power that 'shocks the conscience.'" *See Fagan v. City of Vineland*, 22 F.3d 1296, 1303–09 (3d Cir.1994) (en banc); *see also, Mark v. Borough of Hatboro*, 51 F.3d 1137, 1151–53 (3d Cir.) *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). It went on to explain that while tests like gross negligence, recklessness, or even callous indifference must be met, the acts of the official must also shock the conscience before those acts are actionable.

I am not at all confident that those circuits are exactly right. My confidence is particularly shaken when I consider that in *Collins* none of the ordinary tort indicia were present. Indeed, the Court pointed out that it was not alleged that the supervisor knew of a significant risk or even that he should have known of one. Still, the Court gave serious consideration to the shocks the conscience test. Thus, it may well be that the Court sees that test as a separate way to create a substantive due process liability and that the liability might even exist in some cases where the individual was grossly negligent.

If the danger is extremely high, we may well demand much more of those who could loose it upon us, and our consciences might be highly shocked when they do not live up to our expectations. As the Fifth Circuit has said:

> Many courts have simply applied common law tort principles to the concept of abuse of government power holding that, while simple negligence is not actionable under § 1983, gross negligence, recklessness, callous indifference or intentional conduct are.... While terms applicable to common law torts may help to determine what type of conduct constitutes abuse of power, use of such terms can be misleading.... Such terms state only a standard of care. They do not take into account the exact responsibilities of a particular official or his power to take certain actions.

*Love v. King*, 784 F.2d 708, 713 (5th Cir. 1986) (citations omitted). That statement and statements like it generally seem to assume that some exacerbated mental element will always be found. Perhaps so, but I rather expect that the relationship between mental states, possible harm, foreseeable risk, and actual harm is what has led to the somewhat inconsistent locutions that we find in some of our prior cases.

In general our task is not quite complete once we identify some tort-like mental state, if we are speaking of a substantive due process claim which is not linked to a specific constitutional provision. Perhaps shocks the conscience is an entirely separate freestanding inquiry wholly apart from normal constitutional tort theory, or perhaps it is an inqui-

ry that must be made in every constitutional tort claim of this type. We need not resolve that issue today because the parties have not argued it at any level. They have satisfied themselves with arguing the mental state question answered in the majority opinion. But there the issue is, lurking in the legal background, and we cannot ultimately ignore it.

The issue must be resolved, but that resolution must await another case. What we cannot do is avoid it by eliding what the Supreme Court has written. Perhaps the best solution is to use an apotropaic eraser on the phrase "shocks the conscience," but it is up to the Supreme Court to use it. Thus, I concur in all but the attempt to do that which we cannot do; as to that attempt, I dissent.